**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1685-24

MONICA VOGEL,

    Plaintiff-Appellant,

v.

MOUNTAIN VIEW GOLF
COURSE, MERCER COUNTY
PARK COMMISSION, and
COUNTY OF MERCER,

    Defendants-Respondents,

and

STATE OF NEW JERSEY,

    Defendant.

_____

Argued April 28, 2026 – Decided July 22, 2026

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1194-21.

Ksenia Cutler argued the cause for appellant (Stark & Stark, PC, attorneys; Ksenia Cutler, on the briefs).

Michael Anthony Amantia, Assistant County Counsel, argued the cause for respondents (Paul R. Adezio, Mercer County Counsel, attorney; Michael Anthony Amantia, on the brief).

PER CURIAM

Plaintiff Monica Vogel appeals from two Law Division orders: (1) the October 23, 2024 order granting summary judgment to defendants Mountain View Golf Course (Mountain View), Mercer County Park Commission (MCPC), and County of Mercer (collectively, the County) and dismissing her complaint for damages arising from a slip and fall on County property; and (2) the January 7, 2025 order denying her motion for reconsideration of the October 23, 2024 order. We reverse the October 23, 2024 order and remand for further proceedings.

I.

The County owned real property in Ewing Township on which its agency, MCPC, operated Mountain View, a public golf course. Mountain View included a clubhouse at which food, refreshments, and catering services were offered to the public. In 2018, after issuance of requests for proposals (RFPs), the County awarded a contract to Heirloom Events, LLC (Heirloom) to operate the food, refreshment, and catering concession at the Mountain View clubhouse. At the

2

time the contract was awarded, another vendor had been operating the clubhouse concession.

The contract and RFPs included a leasing provision naming Heirloom as a commercial tenant at the clubhouse. Under the RFPs, Heirloom assumed responsibility for the repair and maintenance of all MCPC-owned equipment in the clubhouse kitchen. The County, however, retained responsibility to make necessary repairs to the clubhouse plumbing. The RFPs provided, in relevant part:

> [Heirloom] shall, at its own expense and upkeep, make such repairs or improvements necessary to maintain the [MCPC-]owned building and areas occupied for the purpose of operating the concession and shall be responsible for the daily maintenance and upkeep. [Heirloom] shall keep the hood system free and clear of grease and shall have the entire hood and duct system cleaned bi-annually. Also, [Heirloom] will be responsible for monthly cleaning of the grease trap. [Heirloom] shall be responsible to make all necessary repairs to the hood and exhaust fan . . . and cleaning . . . common areas . . . . . . . [Heirloom] will not be responsible for the repairs to the . . . plumbing.

On June 15, 2019, plaintiff was employed by Heirloom as a server and bartender at the Mountain View clubhouse restaurant. According to plaintiff, while she was carrying food to a customer, a puddle of water on the kitchen floor

3

caused her to slip and fall and sustain serious and possibly permanent bodily injuries.

On June 4, 2021, plaintiff filed a complaint in the Law Division seeking damages for her injuries under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3. She alleged the County created a dangerous condition on its property, or permitted a dangerous condition to exist despite actual or constructive notice of the condition, and acted in a palpably unreasonable manner in not ameliorating the dangerous condition. Plaintiff also alleged the County failed to warn her of the condition, did not maintain safe premises, failed to inspect its property, and did not exercise due care under the circumstances.

After discovery, defendants moved for summary judgment. Plaintiff opposed the motion. According to plaintiff, on the day she fell, she was wearing slip-proof shoes while carrying food from the kitchen to a customer in the dining room. At her deposition, she testified, "I came out through the kitchen. As soon as I walked around the bar, I – as soon as I hit the tile, my feet went right out from under me and I landed on the top of my butt" on the bone. When plaintiff got up, she noticed her shoes were wet. She followed her footprints back around the corner of the bar and into the kitchen where she saw "a puddle on the floor" near the refrigerator and ice machine. Plaintiff assumed the water came from

4

the equipment and her shoes became wet in the puddle, but could not recall walking through the puddle. When asked why she believed the water came from the refrigerator or ice machine, plaintiff said, "because it was – underneath. You could see it coming from underneath the machine."

Plaintiff alleged the kitchen floor had periodic "water/flooding" issues for many years, including prior to issuance of the concession to Heirloom. Those issues persisted after Heirloom began operating the clubhouse, with water accumulating on the kitchen floor at least five times a month. She alleged water accumulated on the floor in the dish room, on the walkway in the kitchen to the dish room, and in front of the ice machine, freezer, and refrigerator in the kitchen. According to plaintiff, water from the ice machine did not flow to the drain under the ice machine. Instead, the water "[came] out the wrong way, the way it's not supposed to go" and flowed toward the bar and, ultimately, under the doorway that leads to the bar and restaurant.

Plaintiff argued Heirloom repeatedly notified the County of the ongoing puddling issues in the clubhouse kitchen. In response to those notifications, the County dispatched Vince Messina, a plumber and County employee, or another employee to address the condition on a temporary basis. Plaintiff alleged Messina on one occasion snaked clogged drains in the kitchen to clear water

5

from the kitchen floor. In addition, plaintiff alleged the County conducted routine inspections of the kitchen, during which its employee was notified of the ongoing puddling caused by ineffective draining of water on the kitchen floor.

Thus, plaintiff argued summary judgment was not warranted because there was a genuine issue of material fact whether the County was aware of a dangerous condition on its property – inadequate draining of water on the kitchen floor – that it failed to ameliorate. Plaintiff attributed the ongoing condition to the plumbing in the clubhouse, and not to the kitchen equipment. She also argued a genuine issue of material fact existed with respect to whether the County's failure to ameliorate the condition was palpably unreasonable under the TCA and constituted a waiver of defendants' immunity.

The County did not dispute water periodically accumulated on the floor in the clubhouse kitchen. However, it attributed the water to the equipment Heirloom was contractually responsible to maintain. The County alleged Heirloom acknowledged its responsibility to address the flooding near the ice machine when its employees periodically used squeegees to clear water from the kitchen floor and placed warning signs near the wet floor. The County argued its contractual relationship with Heirloom precluded a waiver of the County's immunity under the TCA for plaintiff's injuries because it was not palpably

6

unreasonable for it to contract with a vendor to maintain the equipment and keep the kitchen floor free of hazards caused by the equipment. The County also argued plaintiff could not prove the water that caused her fall arose from a plumbing issue, and not from Heirloom's failure to maintain equipment or from routine operations in the kitchen.

The County conceded Messina addressed plumbing issues in the kitchen, but contended his repairs concerned leaking faucets, sinks, and clogged pipes. Messina testified he determined the clogged pipes were caused by grease that escaped from poorly maintained grease traps. Heirloom had a contractual obligation to properly maintain the grease traps in the kitchen. Thus, the County argued if the water that caused plaintiff to fall was the result of a clogged pipe, it was caused by Heirloom's contractual breach.

Alternatively, the County argued if the TCA applied, plaintiff could not establish a waiver of immunity because the County was not on notice water had accumulated on the kitchen floor on June 15, 2019. A County employee performed a routine inspection of the kitchen on June 14, 2019, the day before plaintiff fell, and did not observe water on the floor. In addition, the County argued plaintiff could not establish the water she observed on the kitchen floor was the proximate cause of her fall.

A-1685-24

On October 12, 2024, the court issued an oral decision granting defendants' motion. The court began its analysis by concluding it would examine only the six-month period during which Heirloom held the concession at the clubhouse. Thus, the court did not consider plaintiff's evidence the County was aware for years water periodically pooled on the kitchen floor because of inadequate drainage. In addition, the court found there was no evidence the water plaintiff alleged caused her fall was the result of a plumbing issue at the clubhouse or was the proximate cause of her fall. Based on these findings, the court concluded no reasonable jury could find defendants acted in a palpably unreasonable manner, given the cause of plaintiff's fall was water from equipment for which Heirloom was responsible. The motion court also found there was no genuine issue of material fact the County did not have actual or constructive notice of the water on the floor the day plaintiff fell. Thus, the court found plaintiff could not establish liability under the TCA. An October 23, 2024 order memorialized the court's decision.

Plaintiff subsequently moved for reconsideration. In support of the motion, she relied on an expert report she possessed, but did not produce, in opposition to defendants' summary judgment motion. In addition, plaintiff reiterated the arguments she made in opposition to defendants' motion.

A-1685-24

On January 7, 2025, the court issued an oral decision denying plaintiff's motion. The court found plaintiff identified no evidence or argument the court overlooked when it granted defendants' motion. In addition, the court again concluded the record contained no evidence on which a jury could find defendants acted in a palpably unreasonable manner or caused plaintiff's injuries. The court also restated its conclusion plaintiff raised no genuine issue of material fact the water on the kitchen floor was the proximate cause of her injuries. Finally, the court declined to consider the expert report because plaintiff did not submit it in opposition to defendants' summary judgment motion. A January 7, 2025 order memorialized the court's decision.

This appeal followed. Plaintiff argues the motion court erred because it: (1) failed to view the evidence in the light most favorable to her; (2) incorrectly limited its inquiry to evidence relating to the six-month period Heirloom had the concession; (3) erroneously based its decision on an absence of evidence the County had actual or constructive notice of the water on the kitchen floor on June 15, 2019, when plaintiff's claim is based on the County having actual or constructive notice of the ongoing inadequate drainage in the kitchen; and (4) disregarded testimony of several witnesses that inadequate drainage caused puddling in the kitchen periodically for many years.

A-1685-24

II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful

10

arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). "[P]ublic entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. The requirements of the TCA are "stringent" and place a "heavy burden" on plaintiffs seeking to establish public entity liability. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993).

Through enactment of N.J.S.A. 59:4-2, a provision of the TCA, the Legislature waived public entity immunity for injuries caused by a dangerous condition of public property in limited circumstances. The statute provides, in relevant part, as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition

A-1685-24

created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a.    a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b.    a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

N.J.S.A. 59:4-1(a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . . " Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

N.J.S.A. 59:4-3 establishes when a public entity will be deemed to have actual or constructive notice of a dangerous condition of its property:

a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

We agree with plaintiff's argument the motion court misidentified the dangerous condition she alleges caused her injuries. Plaintiff alleges the water that caused her fall was on the floor because of the inadequate drainage system in the kitchen. Plaintiff presented evidence the drains in the kitchen floor, rather than providing an effective means of drainage, allowed water to pool. She testified when water dripped from the ice machine it did not migrate toward the floor drain under the machine. Instead, the water flowed toward the bar, under a door to the bar area, and into the bar. In addition, plaintiff and other witnesses testified that over a period of twenty years water periodically pooled on the kitchen floor because of inadequate drainage. Plaintiff also produced proof the periodic pooling, approximately five times a month over twenty years, caused other employees to slip and fall or nearly fall on several occasions. The

13

witnesses testified a County employee repeatedly responded to reports of pooling in the kitchen and attempted to address the condition. However, according to witnesses, the County did not take sufficient measures to cure the condition, as water continued to pool on the kitchen floor. Plaintiff produced sufficient evidence to create a genuine issue of material fact with respect to the existence of the dangerous condition she alleged caused her injuries and the duration of that condition.[1]

Because of its misidentification of the dangerous condition alleged by plaintiff, the motion court erred when it concluded plaintiff produced no evidence the County was on actual or constructive notice of the condition. While it is true the record contains no evidence the County had actual or constructive notice of the water on the kitchen floor on June 15, 2019, the presence of the water on that day is not the dangerous condition alleged by plaintiff. There is more than sufficient evidence in the record to survive summary judgment the County was on actual or constructive notice of the

---

[1] The motion court limited its inquiry to the six-month period Heirloom had the concession. The court did not explain the basis for this limitation, and we see no justification for it in the record. Plaintiff produced evidence the drainage issue at the clubhouse persisted for many years prior to the County's award of the concession to Heirloom.

A-1685-24

alleged underlying inadequate drainage system in the clubhouse kitchen that plaintiff contends caused water to pool on the day she fell.

The June 14, 2019 inspection does not preclude a finding of actual or constructive notice of that condition. The inspection, which plaintiff alleges was for cleanliness, did not include an inspection of the adequacy of the drainage system. While the inspector did not observe water pooling on the kitchen floor, he did not examine the underlying condition plaintiff alleges was the cause of her fall.[2]

We also agree with plaintiff's argument she produced sufficient evidence to survive summary judgment the inadequate drainage system was the proximate cause of her injuries. "The issue of causation is ordinarily left to the fact-finder." Townsend v. Pierre, 221 N.J. 36, 59 (2015). "However, that general rule 'is not absolute. As this Court has noted, the issue of proximate cause may be removed from the fact finder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established.'" Gilbert v. Stewart,

---

[2] Because the dangerous condition alleged by plaintiff is connected to the clubhouse plumbing, we need not address the County's argument Heirloom, as a commercial tenant, was solely responsible for plaintiff's fall. See Geringer v. Hartz Mountain Dev. Corp., 388 N.J. Super. 392 (App. Div. 2006). The County concedes it retained responsibility for maintaining the clubhouse plumbing when it entered the concession contract with Heirloom.

247 N.J. 421, 443 (2021) (emphasis in original) (quoting Townsend, 221 N.J. at 60).

"Proximate cause consists of 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Ibid. (quoting Townsend, 221 N.J. at 51) (internal quotations removed). Proximate cause "is that combination of 'logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." Williamson v. Waldman, 150 N.J. 232, 246 (1997) (quoting People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 264 (1985)).

"Foreseeability is a constituent part of proximate cause . . . ." Komlodi v. Picciano, 217 N.J. 387, 417 (2014). It "is determined by an objective standard, namely, whether 'a reasonably prudent, similarly situated person would anticipate a risk that [his or] her conduct would cause injury or harm to another person.'" Gilbert, 247 N.J. at 444 (alteration in original) (quoting Komlodi, 217 N.J. at 417-18). "Thus, if 'the injury or harm suffered was within the realm of reasonable contemplation, the injury or harm is foreseeable.'" Ibid. (quoting Komlodi, 217 N.J. at 418).

16

On the issue of proximate cause, the motion court found plaintiff did not "indicate that she saw the water before she went into the bar area and fell or that she even had transversed the area where the pool of – the alleged pool of water was seen after she returned to the kitchen. So there is a serious issue regarding proximate cause here."

When viewed in the light most favorable to plaintiff, the record contains sufficient evidence on which a factfinder could conclude the inadequate drainage system caused water to pool on the kitchen floor and the resulting pooled water was the proximate cause of plaintiff's injuries. Plaintiff testified she noticed her shoes were wet immediately after she fell. She arose from the fall and retraced her step into the kitchen, where she saw water pooled on the floor. A jury may rely on that testimony to conclude plaintiff stepped in the water and, when she reached the tiled floor in the bar area, the wetness on her shoes caused her to fall. That finding is not precluded by plaintiff not having seen the water when she first passed through the kitchen.

Finally, to establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence." Coyne v. State, Dep't of Transp., 182 N.J. 481, 493 (2005). Palpably unreasonable implies behavior by a public entity "'that is patently unacceptable under any circumstance' and

17

that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). An analysis of whether a public entity's behavior is palpably unreasonable involves "not only what was done" but also the entity's "motivating concerns." Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001). "Simply put, the greater the risk of danger known by the [public entity] and sought to be remedied, the greater the need for urgency." Ibid.

Although whether a public entity acted in a palpably unreasonable manner is often decided by a jury, the court may decide the question in appropriate cases. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2001). "[L]ike any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence." Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010) (citing Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 451-52 (App. Div. 1993)).

We disagree with the motion court's conclusion no factfinder could conclude the County acted in a palpably unreasonably manner. The court's conclusion appears to be based on its misidentification of the dangerous

condition alleged by plaintiff. When viewed in the light most favorable to plaintiff, the pooling on the kitchen floor because of the inadequate drainage system happened approximately five times a month for twenty years. The County was on notice of the condition, but took only stopgap measure to address the danger posed to those working in the clubhouse kitchen. A jury could determine it was palpably unreasonable for the County not to effectively address the inadequate drainage system over a long period of time and instead allow water to periodically pool on the kitchen floor.

We therefore reverse the October 23, 2024 order and remand the matter for trial. In light of our decision, we need not consider plaintiff's appeal of the January 7, 2025 order.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

19

A-1685-24